UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KATHLEEN MARIE TAYLOR,

                 18-CV-945-MJR
                 DECISION AND ORDER

       Plaintiff,

 -v-

ANDREW SAUL,
Commissioner of Social Security,

       Defendant.
_____

  Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 12).

  Plaintiff Kathleen Marie Taylor brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security finding her ineligible for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Taylor's motion (Dkt. No. 8) is denied, the Commissioner's motion (Dkt. No. 10) is granted, and this case is dismissed.

## **BACKGROUND**

  On May 27, 2014, Taylor filed an application for DIB, alleging disability as of September 8, 2012, due to severe migraine headaches with dizziness (Tr. 77, 139).[1] The date she was last insured for DIB was June 30, 2013 (Tr. 142). Her application was denied on July 7, 2014. (Tr. 84-88). On August 27, 2014, Taylor requested a hearing before an

---

[1]  References to "Tr." are to the administrative record in this case.

administrative law judge ("ALJ"). Such a hearing was held before ALJ Bryce Baird on September 22, 2016, at which Taylor and her attorney appeared (Tr. 35-76). Subsequent to the hearing, Taylor submitted additional evidence that was added to the record. (Tr. 17). On May 17, 2017, the ALJ issued a decision finding Taylor not disabled through June 30, 2013, the last date insured. (Tr. 26). That decision became final when on July 2, 2018, the Appeals Council denied her request for review. (Tr. 1-4). This action followed.

## DISCUSSION

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective

medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements

of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to

the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating disability claims. Under step one, the ALJ found that Taylor had not engaged in substantial gainful activity since September 8, 2012, her alleged onset date, through her date last insured, June 30, 2013. (Tr. 19). At step two, the ALJ concluded that Taylor has the following severe impairment: migraine headaches with dizziness. (Tr. 20). At step three, the ALJ found that Taylor does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 21). Before proceeding to step four, the ALJ assessed Taylor's RFC, in pertinent part, as follows:

> [T]he claimant had the residual functional capacity to perform a wide range of light work. The claimant could Specifically, she could lift and/or carry and push and/or pull up to 10 pounds frequently and 20 pounds occasionally Further, she could sit up to 6 hours in an 8-hour workday and stand and/or walk up to 2 hours in an 8-hour workday. She required a sit/stand option, allowing for up to 30 minutes after 15 minutes of standing or walking while remaining on task at all times. The claimant could not use foot controls bilaterally and could do only occasional climbing of ramps or stairs and balancing. She could not climb ladders, ropes, or scaffolds or performing crawling, kneeling, or crouching. However, she could perform frequent stooping. Finally, the claimant could have no exposure to excessive heat, cold, moisture, or humidity and no exposure to hazards such as unprotected heights or moving machinery.

(Tr. 21-22). Proceeding to step four, the ALJ found that Taylor was not capable of performing past relevant work. (Tr. 25). At step five, the ALJ found that, considering Taylor's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed through her

- 6 -

last insured date, namely, expediter clerk and order clerk. (Tr. 26). Accordingly, the ALJ concluded that Taylor was not under a disability under the Act, from her alleged onset date through her last-insured date. (Tr. 26).

IV. *Taylor's Challenges*

*ALJ's RFC Determination is Improperly based on his Lay Judgement*

Taylor argues that the ALJ's decision is not supported by substantial evidence as he improperly relied on his own lay opinion rather than any medical opinion. The Court disagrees.

A claimant's RFC is the most a claimant can still do despite her limitations. See 20 C.F.R. §§ 404.1545(a); *Woodmancy v. Colvin*, 577 F.App'x 72, 74 n.1 (2d Cir. 2014). The final responsibility for assessing a claimant's RFC rests with the ALJ, based on all the relevant medical and other evidence in the record. See 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), 416.945(a)(3), 416.946(c). Relevant medical evidence includes not only medical opinions, but also medical reports from treating and examining sources and descriptions and observations of a claimant's limitations by the claimant and others. See 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The burden is on the claimant to show that she cannot perform the RFC as found by the ALJ. See *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009).

The objective evidence from the relevant period, September 8, 2012 (the alleged onset date) through June 30, 2013 (the date last insured), supports the ALJ's RFC finding. There is substantial evidence that, during this approximately ten-month period, Taylor demonstrated normal neurological and physical functioning (Tr. 22-23, 229, 234-35, 247, 253-54, 334, 398, 402). She exhibited intact coordination, normal gait, normal sensation,

and normal strength (Tr. 229, 234-35, 253-54, 334). Her EKG and vestibular dizziness tests were normal (Tr. 336-37, 398). Despite these normal objective findings, the ALJ included in the RFC finding several limitations that would account for Taylor's dizziness and headaches (Tr. 22).

Taylor's main issue with the RFC finding is that the ALJ did not have a medical opinion on which to base the RFC. However, Taylor, not the ALJ, had the burden of providing evidence to support her claim, and she failed to meet that burden. See 20 C.F.R. § 404.1512 (noting that the claimant has the burden of proving that she is disabled). According to the only medical opinion Taylor provided, she had functional limitations, but those limitations did not apply before September 2014 – more than a year after the date last insured (Tr. 420). Therefore, the medical opinion that Taylor herself provided indicated that she did not have functional limitations during the relevant period, and the normal objective findings outlined above support that determination.

Moreover, contrary to Taylor's argument, the ALJ did not err in assessing the RFC without a medical opinion. Remand where the record contains no medical opinions is unnecessary where, as here, "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. Apr. 2, 2013) ("[g]iven the specific facts of this case, including a voluminous medical record assembled by the claimant's counsel that was adequate to permit an informed finding by the ALJ, we hold that it would be inappropriate to remand solely on the ground that the ALJ failed to request medical opinions in assessing residual functional capacity"). Here, there was substantial evidence supporting the ALJ's determination that Taylor could perform a wide range of light work. In addition

to the normal medical findings stated above, the ALJ noted that Taylor continued to work as a substitute teacher during the relevant period. (Tr. 229, 396). Therefore, the ALJ was reasonable in assessing an RFC for light work with additional limitations.

*Failure to Evaluate Taylor's Credibility Correctly*

Taylor also contends that the ALJ did not properly evaluate her subjective allegations of debilitating symptoms. The Court finds this contention without merit, as the ALJ articulated his reasons for his finding, and substantial evidence supports those reasons.

According to the Second Circuit, "the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). An ALJ should consider the following factors when evaluating a claimant's symptoms: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) any precipitating and aggravating factors; (4) medications taken to alleviate pain, including side effects and effectiveness; (5) treatment received to relieve pain; and (6) any other measures the claimant uses to relieve pain. See 20 C.F.R. § 404.1529(c)(3); Social Security Ruling (SSR) 16-3p, 2016 WL 1119029, at *7 (S.S.A. Mar. 16, 2016). The ALJ evaluates these factors in connection with the other evidence in the record to make a credibility determination. See 20 C.F.R. § 404.1529(c)(4).

"The ALJ's Decision must contain specific reasons for the finding on credibility,

supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." *Cichocki v. Astrue*, 534 F.App'x 71, 75 (2d Cir. Sept. 5, 2013). "Generally, it is the function of the ALJ, not the reviewing court, to appraise the credibility of witnesses." *Tankisi*, 521 F. App'x at 35. Courts "have no reason to second-guess the credibility finding…where the ALJ identified specific record based reasons for his ruling." *Stanton v. Astrue*, 370 F.App'x 231, 234 (2d Cir. Mar. 24, 2010).

Here, the ALJ properly evaluated Taylor's subjective allegations and gave specific reasons for finding that they were not entirely consistent with the record evidence (Tr. 18-21). As the ALJ explained, Taylor said she was unemployed during the relevant period, but Taylor's medical records show that she was employed as a substitute teacher during the relevant period. (Tr. 24, 234, 334). Contrary to Taylor's argument, this evidence is relevant in evaluating her subjective allegations. A claimant's work during the relevant period may speak to her ability to perform his RFC. See *Rivers v. Astrue*, 280 F.App'x 20, 23 (2d Cir. May 28, 2008) (noting that while claimant's work during the relevant period did not meet the threshold for substantial gainful activity, that he worked at levels consistent with light work). Further, an ALJ may properly consider a claimant's inconsistent statements, including those pertaining to work history, when arriving at a credibility determination. See *Morales v. Berryhill*, No. 14-cv-2803 (KMK) (LMS), 2018 WL 679566, at *17 (S.D.N.Y. Jan. 8, 2018) (citations omitted).

As the ALJ explained, the treatment Taylor received during the relevant period was routine and conservative in nature, and the treatment (medication) controlled her

migraines (Tr. 23-24, 228). An ALJ may properly consider a claimant's conservative treatment in evaluating her credibility. See *Holdridge v. Comm'r of Soc. Sec.*, 351 F.Supp.3d 316, 325 (W.D.N.Y. Dec. 18, 2018) (citing Pahl v. Berryhill, No. 16-cv-538S, 2018 WI 4327813, at *5 (W.D.N.Y. Sept. 11, 2018)); see also 20 C.F.R. § 404.1529(c)(3) (noting that length and type of treatment are relevant factors in evaluating subjective complaints). Moreover, evidence that medication is effective in treating a claimant's symptoms supports an ALJ's finding that the claimant's allegations are not entirely credible. See *Tankisi,* 521 F. App'x at 35.

## CONCLUSION

For the reasons stated, Taylor's motion for judgment on the pleadings (Dkt. No. 8) is denied, the Commissioner's motion for judgment on the pleadings (Dkt. No. 10) is granted, and this case is dismissed.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   March 26, 2020
         Buffalo, New York

                                            */s/ Michael J. Roemer*
                                            MICHAEL J. ROEMER
                                            United States Magistrate Judge